| | |
|---|---|
| **MARY HARRIS**<br>**Administrator for the Estate of**<br>**ALAN LANCASTER, Deceased**<br><br>Plaintiff,<br><br>v.<br><br>**MISSOURI DEPARTMENT OF CORRECTIONS**;<br><u>Serve:</u><br>Trevor Foley, Acting Director<br>Missouri Department of Corrections<br>2728 Plaza Drive<br>Jefferson City, MO 65102<br><br>**MATT STURM** individually and in his official capacity as Deputy Director of the Missouri Department of Corrections at the time of certain events giving rise to this action;<br><u>Serve:</u><br>Trevor Foley, Acting Director<br>Missouri Department of Corrections<br>2728 Plaza Drive<br>Jefferson City, MO 65102<br><br>**VALARIE MOSELEY** individually and in her official capacity as Deputy Director of the Missouri Department of Corrections;<br><u>Serve:</u><br>Trevor Foley, Acting Director<br>Missouri Department of Corrections<br>2728 Plaza Drive<br>Jefferson City, MO 65102<br><br>**TRAVIS TERRY** individually and in his official capacity as Deputy Director of the Missouri Department of Corrections;<br><u>Serve:</u><br>Trevor Foley, Acting Director | CIVIL NO.:<br><br>ACTION FOR DAMAGES<br><br><u>**JURY TRIAL DEMANDED**</u> |

Missouri Department of Corrections
2728 Plaza Drive
Jefferson City, MO 65102

**MATT BRIESACHER** individually and in his official capacity as General Counsel to the Missouri Department of Corrections;
<u>Serve:</u>
Trevor Foley, Acting Director
Missouri Department of Corrections
2728 Plaza Drive
Jefferson City, MO 65102

**MICHELE BUCKNER** individually and in her official capacity as warden of the South Central Correctional Center;
<u>Serve:</u>
Trevor Foley, Acting Director
Missouri Department of Corrections
2728 Plaza Drive
Jefferson City, MO 65102

**JOHN DOE** 1-20 individually and in their official capacity;
<u>Serve:</u>
Trevor Foley, Acting Director
Missouri Department of Corrections
2728 Plaza Drive
Jefferson City, MO 65102

**JANE DOE** 1-20 individually and in their official capacity;
<u>Serve:</u>
Trevor Foley, Acting Director
Missouri Department of Corrections
2728 Plaza Drive
Jefferson City, MO 65102

**THE MISSOURI DEPARTMENT OF CORRECTIONS SOUTH CENTRAL CORRECTIONAL CENTER**

      **Defendants.**

# COMPLAINT

This cause of action arises out of the wrongful death by homicide of Alan Lancaster while an inmate under the care and custody of the Missouri Department of Corrections and its facility the South Central Correctional Center ("jointly the MODOC SCCC"). Alan Lancaster's death was a direct and proximate result of the MODOC SCCC's, its officials, officers, employees and/or agents deliberate indifference and gross negligence in violation of federal and state civil rights, and federal and state laws. Their wrongful acts and/or omissions caused the painful and unnecessary death of Alan Lancaster.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1983 because it arises under the laws of the United States and seeks redress for civil right violations of the Eighth and Fourteenth Amendments of the Constitution of the United States, specifically the deliberate indifference and gross negligence exhibited by the MODOC SCCC its officials, officers, employees, and or/agents which resulted in the wrongful death of Alan Lancaster on January 28, 2023.

2. This Court has supplemental jurisdiction of the common law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this judicial district under 28 U.S.C. §1391(b) because the events giving rise to the claim occurred in the city of Licking, Texas County, Missouri.

## PARTIES

4. Plaintiff, Mary Harris ("Ms. Harris") is a resident of the State of Missouri and brings this cause of action on behalf of her deceased son, Alan Lancaster ("Lancaster") and is the

Administrator of Alan Lancaster's Estate and therefore has standing to bring this cause of action on her deceased son's behalf.

5. Defendant Missouri Department of Corrections ("MODOC") is a state agency that operates correctional facilities in the state, including Licking.

6. Defendant Anne L. Precythe was the Director of the MODOC at the time of the events giving rise to this action. She is sued in her individual and official capacities.

7. Defendant Trevor Foley is the Acting Director of the MODOC. He is sued in his individual and official capacities. Upon information and belief, the Director of the MODOC was and is responsible for administering and overseeing the prison facilities, including but not limited to the training of officers, the medical treatment and healthcare of inmates, and otherwise creating, implementing, and executing policies, procedures, protocols, and/or customs with respect to the operations of the MODOC.

8. Defendant Matt Sturm was the Deputy Director of the MODOC at the time of the events giving rise to this action. He is sued in his individual and official capacities.

9. Valarie Moseley is the Deputy Director of the MODOC. She is sued in her individual and official capacities.

10. Travis Terry is the Deputy Director of the MODOC. He is sued in his individual and official capacities.

11. Upon information and belief, the Deputy Director of the MODOC was and is responsible for administering and overseeing the prison facilities, including but not limited to the training of officers, the medical treatment and healthcare of inmates, and otherwise creating, implementing, and executing policies, procedures, protocols, and/or customs with respect to the operations of the MODOC.

12. Defendant Matt Briesacher is General Counsel of the MODOC. He is sued in his individual and official capacities. Upon information and belief, the General Counsel of the MODOC is responsible for administering and overseeing the production of MODOC documents pursuant to duly authorized requests for documents and information, overseeing the preservation of evidence in matters involving the MODOC, its agents, officials, and employees, and otherwise overseeing the policies and procedures with respect to the legal matters involving the MODOC.

13. Defendant Michele Buckner was Warden of the South Central Correctional Center (SCCC) at the time of the events giving rise to this action. She is sued in her individual and official capacities. Upon information and belief, the Warden of SCCC was and is responsible for administering and overseeing the SCCC, including but not limited to the training of officers, the medical treatment and healthcare of inmates, establishing and implementing policies regarding the care of inmates in administrative segregation, and otherwise overseeing the policies, procedures, protocols, and/or customs with respect to the operations of SCCC at the time of the events.

14. Defendants MODOC SCCC John/Jane Does 1-20 were at all relevant times employees and agents of Defendant MODOC and correctional officers and supervisors at the SCCC at the time of the events in question acting within the course and scope of their employment. They are sued in their individual capacities.

15. Defendants MDOC SCCC John/Jane Does 1-20 will at times collectively be referred to as the "Correctional Officer Defendants."

16. Plaintiff is informed and believes, and based upon that belief alleges that all Defendants employed by MDOC SCCC were, at all times relevant and material to this complaint,

      acting within the course and scope of their employment duties for MDOC SCCC, and under color of law.

17. Plaintiff is informed, believes and thereupon alleges that each of the individual defendants' acts were known to, discovered by, approved and/or ratified by defendant MDOC SCCC, by and through its policy makers, decision makers, officials, officers and/or supervisors.

18. Plaintiffs are informed, believe and thereupon allege that officials, supervisors, policy makers and other individuals with the authority to set or modify departmental policy, dejure or defacto, of Defendant MDOC SCCC, participated in, approved of, ratified and/or failed to prevent the acts by all Defendants and Does, complained of by Plaintiff.

19. Plaintiff is informed, believes and thereupon alleges that at all times herein mentioned, each of the Defendants; including officials, supervisors, watch commanders and other policy makers from Defendant MDOC SCCC, and their agents; was the agent, employee or co-conspirator of one other, some, or all of their Co-defendants.

## FACTS GIVING RISE TO CLAIM

20. On or about January 28, 2023, A. Lancaster was incarcerated in the SCCC under the custody and care of the SCCC.

21. On or about January 28, 2023, on information and belief, A. Lancaster was being held in solitary confinement.

22. On or about January 28, 2023, A. Lancaster was discovered in his cell unresponsive.

23. On or about February 1, 2023, a postmortem examination was performed on A. Lancaster's remains.

24. The results of said postmortem revealed toxic levels of Fentanyl and Xylazine in A. Lancaster's blood (**Exhibit 1** Postmortem Report of A. Lancaster).

25. Cause of death was listed as "Homicide" on the official death certificate of A. Lancaster (**Exhibit 2** copy of Death Certificate of A. Lancaster).

26. The SCCC owed an enhanced duty of care to Lancaster as an inmate in their custody.

27. At no time did the staff, personnel, agents, or employees of the MDOC SCCC observe the actions of the person or persons which resulted in the death of Lancaster though he was an inmate in their custody and control.

28. On information and belief, Lancaster was murdered while in the custody and care of MDOC SCCC by a person or persons unknown.

29. Thereafter, Plaintiff made multiple attempts pursuant to RSMo § 610.027 to make Sunshine Law requests of the Texas County Sherrif's Department, SCCC, and Missouri Department of Corrections requesting records of the investigation regarding her son's death.

30. To date, the all the agencies have collectively failed and refused to comply with the law and produce the requested documents conspiring to and engaging in a cover-up of the wrongdoings of the MDOC SCCC and the Correctional Officer Defendants.

31. Each of the aforementioned acts and omissions by the Defendants, directly, legally and proximately caused the following: deliberate indifference; violation of due process; extreme mental and emotional pain, suffering and anguish; extreme physical pain, suffering and anguish; deprivation of familial association; loss of enjoyment of familial association; loss of life, loss of enjoyment of life; loss of love, services, companionship, comfort, instruction, guidance, counsel, training, and support; humiliation; and expenses associated with medical, funeral and burial costs.

32. Additionally, The Defendants' customs and policies created a substantial risk of harm to

inmates at the MODOC SCCC, including Alan Lancaster, and Defendants were aware of that risk.

33. As a result of Defendants' unconstitutional policies, customs, and practices, Alan Lancaster suffered and died without proper monitoring attention or mental care.

34. Alan Lancaster suffered severe mental and emotional distress prior to his death.

35. The unlawful conduct of Defendants was willful, malicious, and oppressive and was of such nature that punitive damages should be awarded.

**COUNT I**
**42 U.S.C. § 1983 – 8th AMENDMENT DELIBERATE INDIFFERENCE**

36. Ms. Harris repeats and incorporates each and every allegation contained in paragraphs 1-35 above.

37. This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege or immunity secured to Lancaster by the Eighth Amendment to the United States Constitution.

38. On January 28, 2023, Lancaster was an inmate at the MDOC SCCC thus, to the extent he was a post-conviction detainee, Lancaster was entitled to proper custodial care pursuant to the Eighth Amendment of the United States Constitution

39. The Defendants collectively owed Lancaster an enhanced duty of care as he was in their care and custody.

40. At no time were the actions which resulted in the death of Lancaster observed or prevented by the Correctional Officer Defendants nor was medical care provided to Lancaster though he was at all times relevant hereto under the direct custodial care and control of the MDOC SCCC.

41. The Defendants exhibited deliberate indifference to Lancaster resulting in his preventable homicide by a person or person unknown.

42. As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Lancaster lost his life and Ms. Harris suffered loss of society, comfort, and companionship of her son, mental and emotional anguish, and loss of enjoyment of life.

## COUNT II
## 42 U.S.C. § 1983 – 14th AMENDMENT DUE PROCESS VIOLATION DEPRIVATION OF FAMILIAL ASSOCIATION

43. Ms. Harris repeats and incorporates each and every allegation contained in paragraphs 1 through 42 above.

44. This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured to Plaintiff by the Fourteenth Amendment to the United States Constitution.

45. Defendants and each of their acts and/or omissions as alleged in throughout this entire complaint constituted interference with and/or deprivation of Plaintiff's familial relationship and/or association with Lancaster and were thus violations of Plaintiff's Fourteenth Amendment Rights to Due Process of Law.

46. The Defendants knew or reasonably should have known of the actions and activities of persons moving within the SCCC facility.

47. The Defendants owed Lancaster an enhanced duty of care as he was in their care and custody.

48. The Defendants abjectly failed in their duty of care to Lancaster resulting in his

preventable homicide and thereby caused the wrongful death of Lancaster.

49. The Defendants knew that if fatal harm were to befall Lancaster while in their custody, any relationship with his mother or his mother with him would be irrevocably destroyed, nonetheless, the Correctional Officer Defendants deliberately failed to take any measures to provide protections for Lancaster.

50. As a direct and proximate result of the Defendants failure in their duty of care which resulted in the wrongful death of Lancaster, Lancaster was deprived of his due process rights of familial association through the preventable loss of his life and Ms. Harris suffered loss of society, comfort, and companionship of her son, mental and emotional anguish, and loss of enjoyment of life.

## COUNT III
## 42 USC § 1983 (*MONELL* - UNCONSTITUTIONAL POLICIES, CUSTOMS, AND PRACTICES)

51. Plaintiff hereby incorporates paragraphs 1-50, as if fully set forth herein.

52. The Eighth Amendment to the United States Constitution, incorporated by the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments. The Fourteenth Amendment prohibits the deprivation of life without due process of law.

53. Defendants adopted, implemented, and/or enabled the following unconstitutional policies, customs, and/or practices:

    a. Neglecting to observe the persons in their custodial care at all times;

    b. Refusing to employ or implement measures for the wellbeing inmates;

    c. Neglecting to monitor the dangers posed by persons within the MDOC SCCC facility.

54. The Defendants' customs and policies created a substantial risk of harm to inmates at the MDOC SCCC, including Lancaster, and Defendants were aware of that risk.

55. Defendants ratified the actions of the Correctional Officer Defendants by engaging in a cover-up regarding the events and denying Plaintiff access to information regarding Lancaster's death.

56. As a result of Defendants' unconstitutional policies, customs, and practices, Lancaster died an agonizing death.

57. Lancaster suffered severe mental and emotional distress prior to his death.

58. The unlawful conduct of Defendants was willful, malicious, and oppressive and was of such nature that punitive damages should be awarded.

59. Plaintiff seeks attorneys' fees and costs.

## COUNT IV
## 42 USC § 1983 (*MONELL* – FAILURE TO TRAIN OR SUPERVISE)

60. Plaintiff hereby incorporates paragraphs 1-59, as if fully set forth herein.

61. The Eighth Amendment to the United States Constitution, incorporated by the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments. The Fourteenth Amendment prohibits the deprivation of life without due process of law.

62. Historically and to this day, the MODOC tolerates and turns a blind eye to the lack of adequate supervision and negligence in the custodial care of the inmates with which they are entrusted.

63. Defendants were aware of the policies, customs, and practices as alleged above in Count III, and were aware that said policies, customs, and practices created a substantial risk of causing harm and did harm inmate Lancaster, resulting in her death.

64. Despite their knowledge, Defendants were deliberately indifferent to and/or allowed, approved of, and ratified said policies, customs, and practices.

65. Defendants failed to adequately train Correctional Officer Defendants regarding the supervision and monitoring of the inmates in their care.

66. Defendants failed to properly supervise Correctional Officer Defendants, respectively, resulting in the abuse, neglect, and damages alleged herein leading to Lancaster's otherwise avoidable death. Defendants were aware that their failure to supervise created a substantial risk of causing harm to inmates at the MDOC SCCC, including Lancaster.

67. As a direct result of the above-named Defendants' actions and inactions, Lancaster was murdered by a person or persons unknown within the SCCC facility.

68. As a result of Defendants' allowance, approval, and ratification of said policies, customs, and practices, Lancaster was deprived of his life.

69. Lancaster suffered mentally and emotionally and died.

70. Defendants Precythe, Foley, Sturm, Moseley, and Buckner ratified the actions of the Correctional Officer Defendants by engaging in a cover-up regarding the events and denying Plaintiff access to information regarding Lancaster's death.

71. Lancaster suffered severe mental and emotional distress prior to his death.

72. The unlawful conduct of Defendants was willful, malicious, and oppressive and was of such nature that punitive damages should be awarded.

73. Plaintiff seeks attorneys' fees and costs.

## COUNT V
## 42 USC § 1983 (DEPRIVATION OF COMPANSIONSHIP AND SOCIETY)

74. Plaintiff hereby incorporates paragraphs 1-73, as if fully set forth herein.

75. This claim is brought by Plaintiff Mary Harris to vindicate her individual rights.

76. The Fourteenth Amendment prohibits the deprivation of life without due process of law.

Plaintiff Mary Harris, as the mother of Alan Lancaster, has a constitutionally protected liberty interest in the companionship and society of her son.

77. The above-named Defendants acted with deliberate indifference to Plaintiff's constitutionally protected liberty interest and deprived Plaintiff of the love, society, and companionship of her son by the acts and omissions described above.

78. As a direct and proximate result of the deprivation of her constitutional rights, Plaintiff has suffered economic and non-economic injuries caused by Lancaster's death.

79. The unlawful conduct of Defendants was willful, malicious, and oppressive and was of such nature that punitive damages should be awarded.

80. Plaintiff seeks attorneys' fees and costs.

## COUNT VI
## SUPPLEMENTAL STATE LAW CLAIM – WRONGFUL DEATH
## [ Mo. Rev. Stat. § 537.080]

81. Ms. Harris repeats and incorporates each and every allegation contained in paragraphs 1 through 80 above.

82. This cause of action arises under the general laws and statutes of the State of Missouri against all Defendants.

83. Ms. Harris is entitled to bring such action under RSMo § 537.080(2) and this Court has jurisdiction to hear such action pursuant to 28 U.S.C. § 1367(a).

84. In committing the aforesaid acts and omissions specified in all paragraphs herein above, each of these defendants were negligent and careless in their custodial care of Lancaster in all respects, including but not limited to the following:

   a. Defendants failed to institute policy, procedure, or protocol that would protect Lancaster while in their care and custody;

      b.  Defendants failed to observe Lancaster while he was housed within their facility and failed to observe or control a person or persons unknown moving within their facility who murdered Lancaster.

85. As a direct and proximate result of the aforementioned acts and omissions of each of the defendants, Lancaster was denied any chance of survival and died and Ms. Harris suffered loss of society, comfort, and companionship of her son, mental and emotional anguish, and loss of enjoyment of life.

86. The Defendant's aforementioned acts and omissions were willful, wanton, and in conscious disregard of Lancaster's rights entitling the Plaintiff to an award of punitive damages.

87. As a result of the conduct complained of herein, Plaintiffs pray for judgment in an amount that is fair and reasonable against each Defendant in excess of twenty-five thousand dollars as and for actual damages and in an amount that is fair and reasonable as and for punitive damages, costs, and other relief the court deems just and equitable.

88. Ms. Harris specifically allege that Defendants complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein.

## COUNT VII
## SUPPLEMENTAL STATE LAW CLAIM – LOST CHANCE OF SURVIVAL
## [ Mo. Rev. Stat. § 537.021(1)]

89. Ms. Harris repeats and incorporates each and every allegation contained in paragraphs 1 through 88 above.

90. This cause of action arises under the general laws and statutes of the State of Missouri against all Defendants.

91. Ms. Harris is entitled to bring such action under RSMo § 537.021(1) and this Court has jurisdiction to hear such action pursuant to 28 U.S.C. 1367(a).

92. In committing the aforesaid acts and omissions specified in all paragraphs herein above, each of these defendants were negligent and careless in the care and custody of Lancaster in all respects, including but not limited to the following:

    a) Defendants failed to institute policy, procedure, or protocol that would protect Lancaster while in their care and custody.

    b) Defendants failed to observe Lancaster while he was housed within their facility and failed to observe or control a person or persons unknown moving within their facility who murdered Lancaster.

    c) Each individual defendant, as an employee of the MDOC SCCC, breached his or her duty to Lancaster by failing in all of the above respects.

93. As a direct and proximate result of the aforementioned acts and omissions of each of the defendants, Lancaster was denied any chance of survival and died and Ms. Harris suffered loss of society, comfort, and companionship of her son, mental and emotional anguish, and loss of enjoyment of life.

94. Each Defendant's aforementioned acts and omissions were willful, wanton, and in conscious disregard of Lancaster's rights entitling Ms. Harris to an award of punitive damages.

95. As a result of the conduct complained of herein, Ms. Harris prays for judgment in an amount that is fair and reasonable against each Defendant in excess of twenty-five

thousand dollars as and for actual damages and in an amount that is fair and reasonable as and for punitive damages, costs, and other relief the court deems just and equitable.

96. Ms. Harris specifically allege that Defendants complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Lancaster.

## DEMAND FOR TRIAL BY JURY

**PLEASE TAKE NOTICE** that Plaintiff demands a trial by jury as to all issues pursuant to Federal Rule of Civil Procedure 38.

**WHEREFORE,** Plaintiff Mary Harris prays for the following relief from Defendants, and each of them, for each of the above causes of action;

1. For damages for loss of love, services, companionship, comfort, instruction, guidance, counsel, training, and support;
2. For damages for pre-death pain and suffering, loss of life and loss of enjoyment of life;
3. For compensatory damages, including general and special damages, according to proof ;
4. For punitive damages (except as to Defendant MDOC SCCC) pursuant to 42 U.S.C. §1983 and the common and statutory law of the State of Missouri, and any other applicable laws or statutes, in an amount sufficient to deter and make an example;
5. For statutory damages, according to proof;
6. For pre-judgment and post-judgment interest according to proof;

7. For reasonable attorney fees pursuant to 42 U.S.C. §§ 1983, 1988, the common and statutory law of the State of Missouri, and any other applicable provisions;

8. For costs of suit, and;

9. For such other and further relief as is deemed just and proper on the premise.

Respectfully submitted,

_____
Joseph W. Allen     #57669
1440 State Hwy. 248, Ste. Q
Branson, Missouri 65616
Telephone: (417) 334-6818
Facsimile: (417) 612-7081
joe@mybransonattorney.com
**Attorney for Plaintiff**

## VERIFICATION

STATE OF MISSOURI   )
                    )ss.
COUNTY OF           )

Mary Harris, of lawful age, being duly sworn upon her oath, states that she is the Plaintiff named above and that the facts stated in the foregoing are true and correct according to the best of her knowledge and belief.

_____
Mary K Harris
Plaintiff

Subscribed and sworn to before me on this 14 day of FEB, 2025.

_____
Ramona D. May
Notary Public

My seal:

> RAMONA D. MAY
> Notary Public - Notary Seal
> STATE OF MISSOURI
> St. Louis City
> My Commission Expires: Dec. 26, 2027
> Commission # 11480718