IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MARY HARRIS, Administrator for Estate of ALAN LANCASTER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 25-03036-CV-S-BP ) |
| MISSOURI DEPARTMENT OF CORRECTIONS, *et al*. | ) ) ) ) |
| Defendants. | ) |

## **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff filed this case on March 2, 2025, asserting several constitutional and state claims following the death of her son, Alan Lancaster ("Decedent"), while he was in Missouri Department of Corrections custody. (Doc. 1.)[1] Defendants Missouri Department of Corrections ("MDOC"), the South Central Correctional Center ("SCCC"), Matt Sturm, Valarie Moseley, Travis Terry, and Matt Briesacher (collectively "Defendants") filed a Motion to Dismiss, arguing (1) the Complaint fails to state a claim for which relief can be granted and (2) at least some Defendants are immune from suit.[2] The Motion, (Doc. 9), is **GRANTED**, and for the reasons discussed below, (1) Counts I through V are dismissed on the merits and (2) Counts VI and VII are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.[3]

---

[1] Plaintiff purports to bring these claims as the Administrator for Decedent's Estate, (Doc. 1, ¶ 4), but some of the claims (for instance, Counts V and VI) appear to be brought on her behalf. These distinctions are not relevant to the issues presently before the Court.

[2] Defendants John and Jane Doe 1-40, Anne Prescythe, and Trevor Foley were dismissed at Plaintiff's request. (Doc. 5.) Defendant Michele Buckner was dismissed because she was not served. (Doc. 23.)

[3] The Court previously granted the Motion because Plaintiff did not respond. (Doc. 13.) With no opposition from Defendants, the Court granted Plaintiff's Motion to Vacate the dismissal, (Doc. 17), and the Motion to Dismiss is now fully briefed.

## I. BACKGROUND

According to the Complaint, Decedent was incarcerated in SCCC in January 2023. He was allegedly being held in solitary confinement when he was discovered unresponsive and passed away sometime thereafter. The postmortem examination revealed "toxic levels of Fentanyl and Xylazine" in Decedent's blood and the death certificate listed the cause of death as "Homicide." (Doc. 1, ¶¶ 24-25.) The Complaint alleges that "[a]t no time" did any Defendant or employee of MDOC "observe the actions of the person or persons which resulted in" Decedent's death, but Plaintiff believes he was murdered. (Doc. 1, ¶¶ 27-28.) There are no other allegations about the circumstances leading to Decedent's death.

The Complaint asserts seven claims, all of which are purportedly asserted against all Defendants. The claims are as follows:

- Count I: an Eighth Amendment deliberate indifference claim under 42 U.S.C. § 1983;

- Count II: a Fourteenth Amendment claim for "deprivation of familial association" under 42 U.S.C. § 1983;

- Count III: a *Monell* Claim[4] for an unconstitutional policy, custom, and practice in violation of the Eighth and Fourteenth Amendment under 42 U.S.C. § 1983;

- Count IV: a *Monell* Claim for the failure to properly train or supervise employees in violation of the Eighth and Fourteenth Amendment under 42 U.S.C. § 1983;

- Count V: a Fourteenth Amendment claim for "deprivation of companionship and society" under 42 U.S.C. § 1983;

- Count VI: a wrongful death claim under Mo. Rev. Stat. § 537.080; and

- Count VII: a lost chance of survival claim under Mo. Rev. Stat. § 537.021(1).

Defendants argue that (1) several of them are protected by the Eleventh Amendment, (2) several of them are protected by qualified immunity, and (3) Plaintiff has failed to state a claim for

---

[4] *See Monell v. Department of Social Servs.*, 436 U.S.658 (1978).

which relief can be granted.  Plaintiff concedes some of her claims are barred by the Eleventh Amendment but otherwise opposes dismissal.  The Court resolves the parties' arguments below; in doing so, the Court may discuss additional allegations from the Complaint.

## II.  ANALYSIS

Under Rule 12(b)(6), the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint, *e.g.*, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), and the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 38 (8th Cir. 1995).

3

Case 6:25-cv-03036-BP    Document 24    Filed 01/20/26    Page 3 of 11

## A. The Eleventh Amendment

Defendants argue that Plaintiff's claims against MDOC and SCCC are barred by the Eleventh Amendment. The Eleventh Amendment generally forbids suits by citizens against states seeking monetary relief. *E.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997). This prohibition extends to state agencies and other arms of the state (such as MDOC); here, it also extends to SCCC because it is not a legal entity separate from MDOC and any claims against it are really claims against MDOC. Plaintiff does not dispute this analysis, and "agrees that MDOC and SCCC are immune from suit under the 11th Amendment." (Doc. 18, p. 2.)

Plaintiff has also sued the individual Defendants in both their individual and official capacities. A suit against a person in their official capacity is treated as a suit against the entity, and the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 170 (1985). Moreover, in response to the Motion to Dismiss, Plaintiff represents that she now "seeks to proceed solely against the individual defendants in their individual capacities, where sovereign immunity does not apply." (Doc. 18, p. 2.)

Accordingly, MDOC, SCCC, and all claims against individuals in their official capacities are dismissed.

## B. The Federal Claims (Counts I – V)

Defendants argue Counts I through V fail to state a claim for which relief can be granted. They also assert they are entitled to qualified immunity. "Qualified immunity shields . . . state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Defendants' qualified

immunity arguments focus on the first prong; thus, all their arguments—those invoking qualified immunity and those that do not—relate to whether Plaintiff has alleged a violation of the Constitution. Therefore, the Court will focus on that issue.[5]

### *1.  Count I – Deliberate Indifference in Violation of the Eighth Amendment*

Count I alleges Defendants were deliberately indifferent to the danger posed to Decedent by other inmates. The Complaint alleges "the actions which resulted in the" Decedent's death were never observed by Defendants, "nor was medical care provided to" him. (Doc. 1, ¶ 40.) And, in opposing dismissal of Count I, Plaintiff discusses Defendants' alleged failure to monitor and protect Decedent. (Doc. 18, pp. 2-3.) However, the Complaint's allegations do not support an inference Defendants violated the Constitution.

To be liable under a theory of deliberate indifference, the defendant must know that a substantial risk of serious harm existed and must thereafter deliberately disregard the substantial risk and engage in conduct (or fail to act), knowing that their actions are "inappropriate in light of the risk." *Blair v. Bowersox*, 929 F.3d 981, 987-88 (8th Cir. 2019); *see also Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021). "In contrast to negligence, deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quotation omitted). This state of mind "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) (quoting *Lenz v. Wade*, 490 F.3d 991, 993 n.1 (8th Cir. 2007)). In the specific context of a prison, prison officials must take "reasonable measures" to protect inmates, but "a constitutional claim does not lie every time one inmate [harms] another. Rather, prison officials

---

[5] "The court may consider [the qualified immunity] steps in any order, but unless the answer to both of the questions is yes, the defendants are entitled to qualified immunity." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (quotation omitted; cleaned up).

5

Case 6:25-cv-03036-BP     Document 24     Filed 01/20/26     Page 5 of 11

violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (quotations omitted).

Plaintiff fails to allege facts suggesting that Defendants were aware of a substantial risk of harm to the Decedent prior to his death, let alone that they disregarded it. Plaintiff does not allege that any Defendant was aware that the Decedent was a likely target of violence, that he had taken illicit drugs, or that Decedent was experiencing a medical crisis. To the contrary, the Complaint alleges that "at no time" did the staff observe any actions resulting in Decedent's death, (Doc. 1, ¶ 27), and it does not allege any facts about the circumstances leading to his death. This is contrary to the requirement that, to be liable, a Defendant must be aware of a substantial risk to Decedent.[6]

Plaintiff argues that knowledge of a specific danger to Decedent is not required because Defendants should have (1) known they needed to watch inmates at all times and (2) been aware of any illicit drugs in the prison. (Doc. 18, pp. 2-3.) Plaintiff relies on the Eighth Circuit's decisions in *Schaub v. VonWald*, 638 F.3d 905, 916 (8th Cir. 2011) and *Kulkay v. Roy*, 847 F.3d 637, 642-43 (8th Cir. 2017), but neither case supports the broad duty Plaintiff advocates, and her argument is foreclosed by the cases cited above. While some obvious risks allow a plaintiff to establish circumstantial knowledge sufficient to support deliberate indifference, *e.g. Schaub*, 638 F.3d at 916, the cases Plaintiff cites did not hold that the prison environment, itself, creates a duty to know of all dangers therein, or that constitutional duties are automatically violated whenever an incarcerated person is injured. In *Schaub*, the plaintiff's "oozing sores[,] . . . the smell of infection," and a letter from the plaintiff's physician explaining the necessary accommodations to treat the plaintiff's condition put the guards on notice of his medical needs. *Id.* at 915-16. In *Kulkay*, the plaintiff was injured by a saw in a prison workroom which had the manufacturer's

---

[6] The Court further observes Plaintiff has made allegations about Defendants collectively and generally and has not alleged facts related to any specific Defendant.

safety guards removed; however, prison officials knew other inmates had been injured using the saw and that the failure to install the safety guards was a violation of state and federal safety regulations. 847 F.3d at 643. In both cases, there were specific facts known to the defendants which were sufficient to provide knowledge of a specific risk.

But here, Plaintiff relies only the prison officials' general obligation to protect inmates from known risks, the fact that Decedent was killed by another inmate, and her argument that if illicit drugs were present in the prison, Defendants should have known about them—but she alleges no concrete facts to support Defendant's intentional disregard of risk.[7] And as stated above, the Eighth Circuit has held that prison officials do not violate the Constitution whenever one inmate harms another; they are liable "only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (quotations omitted); *see also Johnson v. Schurman*, 145 F.4th 897, 904 (8th Cir. 2025); *Blair v. Bowersox*, 929 F.3d 981, 987-88 (8th Cir. 2019). "It is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff's allegations do not tend to demonstrate any Defendant was aware of facts permitting them to infer a substantial risk of harm existed. Therefore, Plaintiff has not stated a claim for deliberate indifference.

---

[7] Plaintiff argues that "[b]ecause of the closed nature of the prison environment," she does not have access to any information to allege in support of her claim, but she "fully expects to develop more facts through the discovery process." (Doc. 18, p. 3.) However, a plaintiff is not entitled to rely on insufficient pleadings to conduct discovery in the hope of uncovering evidence.

7

### 2. Counts II and V – Deprivation of Familial Association in Violation of the Fourteenth Amendment

Counts II and V are virtually the same. Count II alleges Defendants violated Plaintiff's due process rights by interfering with, or depriving her of, her familial relationship with Decedent. (Doc. 1, ¶ 45.) Count V alleges Defendants violated Plaintiff's due process right to "the companionship and society of her son." (Doc. 1, ¶ 76.) Defendants argue that Plaintiff's due process claims require her to allege facts demonstrating they acted in a manner that shocks the conscience, which she has not done. (Doc. 10, p. 5 (citing *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1222 (8th Cir. 2015).) To satisfy this burden, Plaintiff must allege facts supporting an inference that Defendants' actions were so severe and disproportionate that they were "inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power . . . ." *Andrews v. Schafer*, 888 F.3d 981, 984 (8th Cir. 2018). Plaintiff did not respond to this argument and the Court agrees with Defendants that Counts II and V do not allege facts supporting a violation of Plaintiff's or her son's due process rights. Accordingly, Counts II and V are dismissed.

### 3. Count III and IV – Monell Liability

Counts III and IV are purportedly based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which (along with its progeny) permits "Section 1983 liability for a constitutional violation [to] attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (quotations and citations omitted). Count III alleges "Defendants adopted, implemented, and/or enabled . . . unconstitutional policies, customs, and/or practices," (Doc. 1, ¶ 53), and Count IV alleges Defendants "were aware of the policies, customs, and practices as alleged . . . in Count III [and] were deliberately indifferent to

8

and/or allowed, approved of, and ratified said policies, customs, and practices." (Doc. 1, ¶ 64.) To this extent, Counts III and IV are the same. Count IV then alleges some Defendants failed to adequately train or supervise the Correctional Officer Defendants. (Doc. 1, ¶¶ 65-66.) Defendants argue that Counts III and IV must be dismissed because "the Complaint does not identify any particular policy of MDOC that is unconstitutional [and] Plaintiff has failed to identify any constitutional violation by any MDOC employee." (Doc. 10, p. 7.) The Court agrees.

With respect to the first issue, the Complaint does not allege any policies, customs, or practices that violate the Constitution. Plaintiff points to paragraphs 32, 33, and 62 of the Complaint, (*see* Doc. 18, p. 4), but these paragraphs are only bare assertions that there were unconstitutional customs and policies. The allegedly unconstitutional customs and policies are not identified, and there are no facts alleged that demonstrate any such policies or customs are unconstitutional. Plaintiff has only offered conclusory statements that do not satisfy *Iqbal*'s and *Twombley*'s requirements.

With respect to the second issue, Plaintiff argues there are circumstances in which a supervisor can be personally liable for failing to supervise a subordinate. (Doc. 10, p. 7.) Plaintiff is correct: a supervisor can be liable for a subordinate's constitutional violations if "the supervisor's 'corrective inaction' . . . constitute[s] deliberate indifference to the violation. The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see." *Partridge v. City of Benton, AR*, 157 F.4th 970, 973 (8th Cir. 2025) (quotations omitted). However, this theory of supervisor liability requires that there has been a constitutional violation committed by someone being supervised by the defendant. As Defendants argue (and as

9

discussed above), Plaintiff has not alleged that anybody violated the Constitution—so no supervisor can be liable.[8]

### C. The State Claims

Counts VI and VII arise under state law, and Plaintiff concedes the Court has only supplemental jurisdiction over the state law claims. (Doc. 1, ¶ 2 (citing 28 U.S.C. § 1367(a).) Supplemental jurisdiction is not mandatory, and a court may decline supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction . . . ." *Id.* § 1367(c)(3). The Court's exercise of its power to decline supplemental jurisdiction is discretionary. *E.g.*, *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287-88 (8th Cir. 1998). Here, the Court had original jurisdiction over Counts I-V, but as discussed above these counts are being dismissed against the Moving Defendants. Accordingly, the Court declines to exercise supplemental jurisdiction over Counts VI and VII for the Moving Defendants, and those claims will be dismissed without prejudice.

### III. CONCLUSION

Plaintiff's official capacity claims, and her claims against MDOC and SCCC, are dismissed because they are barred by the Eleventh Amendment. The remaining aspects of Counts I through V are dismissed for failure to state a claim. Finally, Counts VI and VII are dismissed without

---

[8] The Court questions whether Counts III or IV really have anything to do with *Monell*, given that *Monell* provides an avenue for imposing liability on a municipality. There are no municipalities in this case, and the only entity—MDOC—is entitled to Eleventh Amendment immunity. The Court's discussion makes it unnecessary to delve further into this issue.

10

Case 6:25-cv-03036-BP   Document 24   Filed 01/20/26   Page 10 of 11

prejudice because the Court declines to exercise supplemental jurisdiction over them.[9]

**IT IS SO ORDERED.**

DATE: January 20, 2026

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

---

[9] Plaintiff includes an alternative request that she be allowed to file an Amended Complaint. (Doc. 18, p. 5.) She has not filed a formal motion or, more importantly, supplied a copy of the proposed amendment as required by Local Rule 15.1(a). Therefore, the request is denied.